# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHARON ROZIER PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-100-JJF |
| | ) | |
| HOUSEHOLD FINANCE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPENING BRIEF IN SUPPORT OF HOUSEHOLD FINANCE CORPORATION'S MOTION TO DISMISS

Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Kelly A. Green (#4095)
Green@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendant

Dated: September 18, 2006

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT .............................................................................. 3

STATEMENT OF MATERIAL FACTS ................................................................ 4

      A.    The Parties. ................................................................................ 4

      B.    Discrimination Alleged In The Complaint. ...................................... 4

ARGUMENT ..................................................................................................... 5

    I.    STANDARD OF REVIEW FOR A MOTION TO DISMISS. .................... 5

    II.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS
         PLAINTIFF FAILED TO EFFECT TIMELY SERVICE. ........................... 5

    III.    ALTERNATIVELY, A PARTIAL DISMISSAL IS APPROPRIATE
          BECAUSE UNDER DELAWARE STATUTORY LAW, PLAINTIFF
          CANNOT PURSUE HER STATE DISCRIMINATION AND
          RETALIATION CLAIMS IN FEDERAL COURT. .................................. 11

CONCLUSION .................................................................................................. 16

## TABLE OF AUTHORITIES

### CASES

Page

Ayres v. Jacobs & Crumplar, P.A.,
99 F.3d 565 (3d Cir. 1996)........................................................................................7

Braxton v. United States of America,
817 F.2d 238 (3d Cir. 1987)....................................................................................6, 7

Brown v. The Honorable Fedrico Pena,
1997 U.S. Dist. LEXIS 6374 (D. Del. Apr. 11, 1997)................................................7

City of Pittsburgh v. W. Penn Power Co.,
147 F.3d 256 (3d Cir. 1998).....................................................................................5

Conley v. Gibson,
355 U.S. 41 (1957)...................................................................................................5

EEOC v. Avecia Inc.,
2005 U.S. App. LEXIS 22157 (3d Cir. Oct. 13, 2005)............................................14

Ex parte McNiel,
80 U.S. 236 (U.S. 1871)...........................................................................................15

Howmet Corp. v. Tokyo Shipping Co.,
318 F. Supp. 658 (D. Del. 1970)..............................................................................6

In re Michael W. Sheehan,
253 F.3d 507 (9th Cir. 2001) ...................................................................................10

Johnson v. DaimlerChrysler Corp.,
2003 WL. 1089394 (D. Del. Mar. 6, 2003) ..............................................................5

Jordan v. Fox, Rothschild, O'Brien & Frankel,
20 F.3d 1250 (3d Cir. 1994).....................................................................................5

Lessard v. City of Allen Park,
247 F. Supp. 2d 843 (E.D. Mich. 2003)...................................................................15

Link v. Walsh R.R. Co.,
370 U.S. 626 (1962).................................................................................................6

Lovelace v. Acme Markets, Inc.,
820 F.2d 81 (3d Cir.), cert. denied, 484 U.S. 965 (1987)......................................7, 8

RLF1-3059663-1

## TABLE OF AUTHORITIES (CONT.)

Page

McCurdy v. American Board of Plastic Surgery,
157 F.3d 191 (3d Cir. 1998)...................................................................................8, 9, 10

Miree v. DeKalb County, Ga.,
433 U.S. 25 (1977).........................................................................................................5

Oshiver v. Levin, Fishbein, Sedran & Berman,
38 F.3d 1380 (3d Cir. 1994)..........................................................................................5

Parker v. State of Delaware,
2000 WL. 291537 (D. Del. Mar. 13, 2000) ...........................................................10, 11

Petrucelli v. Bohringer & Ratzinger, GMBH,
46 F.3d 1298 (3d Cir. 1995).................................................................................7, 8, 11

Schuster v. Derocil,
775 A.2d 1029 (Del. 2001) ..........................................................................................15

Transportes Aereos de Angola v. Ronair, Inc.,
104 F.R.D. 482 (D. Del. 1985) ......................................................................................6

Wheat v. Airport Authority of Washoe County,
1999 WL. 50879 (9th Cir. Jan. 15, 1999) .....................................................................7

## STATUTES AND OTHER AUTHORITIES

42 U.S.C. §§ 2000(e)-4(g)(1).......................................................................................13

42 U.S.C. § 2000e(b) ...................................................................................................13

Fed. R. of Civ. P. 4(m).........................................................................................5, 6, 8

Fed. R. Civ. P. 8(a)(2)....................................................................................................5

Fed. R. Evid. 201(b)(2) ................................................................................................13

8 James Wm. Moore,
Moore's Federal Practice, § 41.51[1] at 41-179 (3d ed. 2001) .....................................6

5A Charles A. Wright & Arthur R. Miller,
Federal Practice & Procedure § 1357 at 299 (2d ed. 1990)...........................................5

D. Del. L.R. 41.1 ............................................................................................................6

19 Del. C. § 710 ...........................................................................................................14

RLF1-3059663-1

## TABLE OF AUTHORITIES (CONT.)

Page

19 <u>Del. C.</u> § 712 ...................................................................................................11

19 <u>Del. C.</u> § 714 ...........................................................................................11, 12, 13

19 <u>Del. C.</u> § 715 .............................................................................................12, 14

Senate Bill No. 154, 142nd General Assembly (DE 2004) ...............................................15

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Sharon Rozier Phillips ("Plaintiff") commenced an administrative action against Household Finance Corporation[1] ("Defendant" or "Household") when she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL") on or about December 12, 2003 alleging she suffered from discrimination based upon her gender. (Ex. A).[2] On November 17, 2005, Plaintiff was issued her Dismissal and Notice of Rights letter by the EEOC. (Complaint ¶ 8) (Ex. A to Complaint). The EEOC adopted the findings of the DDOL (see Ex. A to Complaint), which had determined Household had not discriminated against Plaintiff.[3] Specifically, the DDOL determined that "there is no reasonable cause to believe that an unlawful employment practice has occurred" because:

> Charging Party failed to provide sufficient evidence that she suffered adverse action because of the alleged sexual harassment ....

> Charging Party's witnesses did not corroborate her allegations.

---

[1] Household Finance Corporation is no longer a legal entity as a result of a merger. The name of the surviving entity is HSBC Finance Corporation. In the event Defendant's motion to dismiss is denied, Defendant's counsel will seek to reach an agreement with Plaintiff's counsel regarding a caption change to reflect the proper name of Defendant. In the event no such agreement can be reached, Defendant will petition the Court to modify the caption. As such, Defendant has not filed at this time a Rule 7.1(a) Disclosure Statement as the named defendant does not exist.

[2] Please note Plaintiff stated that she attached her Charge of Discrimination to the Complaint; however, she failed to do so. (See Complaint ¶ 7, which states, "Plaintiff's charge of discrimination complained of the exact acts of discrimination that are described herein. A true and correct copy of Plaintiff's Charge of Discrimination filed with the DDL and the EEOC is attached hereto as Exhibit A."). As such, the Charge is incorporated by reference. As Household is in possession of the Charge of Discrimination, Household has attached a copy of such hereto at Exhibit A.

[3] As the EEOC decision adopted the findings of the DDOL (see Ex. A to Complaint), the DDOL's decision is incorporated by reference and therefore is attached hereto at Exhibit B.

> Respondent conducted a prompt internal investigation. Consequently, the alleged harasser received corrective discipline from Respondent, which resulted in his immediate transfer....

(Exhibit B).

These facts and the DDOL and the EEOC's determination notwithstanding, Plaintiff filed a four count complaint against Household on February 15, 2006 (the "Complaint") specifically alleging that she was subjected to gender discrimination and that Household retaliated against her under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Delaware Discrimination in Employment Act ("DDEA"). (Complaint ¶¶ 1, 43, 52, 59, 68). However, Plaintiff did not take the necessary steps to serve Defendant with the Complaint.

Accordingly, on August 23, 2006, the Court ordered Plaintiff to show cause as to why the Complaint should not be dismissed for failure to prosecute. (D.I. 5). Subsequently, Plaintiff had the summons issued on August 25, 2006. (D.I. 1 and 6). The Complaint was then served upon Household on August 29, 2006 (D.I. 7), 195 days after the Complaint was filed.

On September 8, 2006, counsel for Plaintiff filed (but did not serve on Defendant) its response to the Court's order to show cause, claiming an inadvertent mistake by counsel. (D.I. 6).

Defendant contends that the Complaint should be dismissed in its entirety for failure to prosecute, particularly because Plaintiff has failed to show just cause for its failure to prosecute. Defendant also contends that the state DDEA discrimination and retaliation counts of the Complaint must be dismissed because DDEA claims may only be pursued in state court. Accordingly, this is the Opening Brief in Support of Household Finance Corporation's Motion to Dismiss.

-2-

## SUMMARY OF ARGUMENT

      1.     Dismissal of the entire Complaint is appropriate as Plaintiff failed to timely serve the Complaint within the 120-day deadline provided for by Federal Rule of Civil Procedure 4(m). Further, Plaintiff cannot show good cause for her failure to serve the Complaint within the required time period.

      2.     In the alternative, Plaintiff's election of the federal forum bars her state law discrimination and retaliation claims as this Court lacks jurisdiction to hear Plaintiff's state claims.

## STATEMENT OF MATERIAL FACTS

Based upon the constraints of Fed. R. Civ. P. 12(b)(6) and solely for the purposes of this motion, Household relies upon the facts contained within Plaintiff's Complaint and the documents referenced therein.

### A.     The Parties.

Plaintiff resides at 5 Westbury Drive, New Castle, Delaware 19720. (Complaint ¶ 11). Plaintiff was hired by Household in September 2002 as a Senior Account Executive. (Complaint ¶¶ 14, 18). Plaintiff resigned from her position at Household. (Complaint. ¶ 53).

Plaintiff alleges that Household has a place of business in Bear, Delaware and is a private financial services company that provides personal, home equity and mortgage loans to its customers. (Complaint ¶ 14). Plaintiff also alleges Household provides these services to its customers in most of the 50 states and Household employs thousands of employees. (Complaint ¶ 15).

### B.     Discrimination Alleged In The Complaint.

Plaintiff alleges in September 2003 she began being supervised by male supervisor Terry Parker ("Parker"). (Complaint ¶ 22). Plaintiff alleges Parker made inappropriate sexual comments and stared at her while he was her supervisor. (Complaint ¶ 23). Plaintiff also alleges she was retaliated against by Household because she was subjected to a hostile work environment and less favorable working conditions. (Complaint ¶¶ 53, 69). As such, Plaintiff alleges that she suffered employment discrimination and retaliation under Title VII and the DDEA. (Complaint ¶¶ 1, 43, 52, 59, 68).

After a sexual harassment complaint was made against Parker, Plaintiff concedes that Defendant transferred Parker away from Plaintiff's worksite to another of Defendant's locations outside the State of Delaware. (Complaint ¶ 39).

-4-

**ARGUMENT**

## I.   STANDARD OF REVIEW FOR A MOTION TO DISMISS.

On a motion to dismiss, the court is required to accept as true all allegations in the plaintiff's complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the nonmoving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).   While the court may accept well-pleaded allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegation. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Johnson v. DaimlerChrysler Corp., 2003 WL 1089394, at *1 (D. Del. Mar. 6, 2003).   Moreover, the plaintiff must set forth sufficient information to outline the elements of her claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).   The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the pleading, and matters of public record. See City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); see 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 at 299 (2d ed. 1990).

## II.   THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS PLAINTIFF FAILED TO EFFECT TIMELY SERVICE.

Federal Rule of Civil Procedure 4(m) provides, in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Courts have held that, in the absence of a showing of good cause, adherence to Federal Rule of Civil Procedure 4(m) 120-day time limit is appropriate.[4]   Involuntary dismissal of an action is within the Court's discretion.   Link v. Walsh R.R. Co., 370 U.S. 626, 633 (1962); Transportes Aereos de Angola v. Ronair, Inc., 104 F.R.D. 482, 504 (D. Del. 1985).   Here, Plaintiff did not serve Defendant until well after the 120-day time limit had passed, specifically 75 days later. Afterward, Plaintiff claimed, in its letter to the Court, that counsel had recorded in their file that service was completed in error.[5]

In the Third Circuit, "inadvertence of counsel does not constitute good cause" for purposes of extending the 120 day service deadline.   Braxton v. United States of America, 817 F.2d 238, 242 (3d Cir. 1987).   "Good cause" has been defined by the Third Circuit as "at least as much as would be required to show excusable neglect."[6]   Braxton, 817 F.2d at 241.   Importantly, in identifying what activities fail to constitute good cause, the Third Circuit has repeatedly held

---

[4] Further, Rule 4(m) is consistent with other rules of the Court requiring diligence of prosecution of an action.   Plaintiff's failure to pursue any aspect of this action for months warrants an order of dismissal.   Local District Court Rule 41.1 states that this Court may dismiss a pending case for failure of a party to diligently prosecute the case "wherein no action has been taken for a period of 3 months … unless good reason for the inaction is given."   D. Del. L.R. 41.1.   Rule 41(b) "imposes a duty of due diligence on plaintiff in view of the policy favoring the prompt disposition of cases."   8 James Wm. Moore, Moore's Federal Practice, § 41.51[1] at 41-179 (3d ed. 2001).   Should the plaintiff "fail in the diligent prosecution of the action the consequences are the same as if no action had been taken."   Howmet Corp. v. Tokyo Shipping Co., 318 F. Supp. 658, 660 (D. Del. 1970).

[5] In the letter to the Court, counsel for Plaintiff stated that "counsel's file was inadvertently marked as having received the executed Waiver of Summons form" and that "based upon this error, Plaintiff's counsel mistakenly believed that service of the Summons and Complaint had been perfected." (D.I. 6).

[6] Proper service of the Complaint would have prompted action by Defendant within 20 or 60 days on the part of the Defendant, such as the filing of an answer or motion to dismiss or a calling to request an extension to take action.   Plaintiff's counsel should have anticipated Defendant's response and noted when it did not receive it.   As such, Defendant believes it will be difficult for Plaintiff to show her failure to timely serve the Complaint was the result of excusable neglect.

that "when delay results from inadvertence of counsel, it need not be excused."[7]  See Petrucelli v.

Bohringer & Ratzinger, GMBH, 46 F.3d 1298, 1307 (3d Cir. 1995).  Likewise, "half-hearted"

efforts by counsel to effect service will not excuse delay.  Lovelace v. Acme Markets, Inc., 820

F.2d 81, 84 (3d Cir.), cert. denied, 484 U.S. 965 (1987); see also Brown v. The Honorable

Fedrico Pena, 1997 U.S. Dist. LEXIS 6374, at *9 (D. Del. Apr. 11, 1997) (dismissing

discrimination complaint for failure to properly serve under Rule 4).  Nor is failure to comply

with the "technical niceties" of service good cause.  Ayres v. Jacobs & Crumplar, P.A., 99 F.3d

565, 567 (3d Cir. 1996) (affirming dismissal of complaint for failure to timely serve appropriate

summons).  In sum, "the lesson to the federal plaintiff's lawyer is not to take any chances.  Treat

the 120 days with the respect reserved for a time bomb."  Braxton, 817 F.2d at 241 (affirming

dismissal of complaint for failure to timely serve).

    The Third Circuit and this Court have dismissed other actions for failure to comply with

Federal Rule of Civil Procedure 4(m) coupled with an inability to show good cause for untimely

service.  For example, in Lovelace v. Acme Markets, Inc., the Third Circuit affirmed a district

court's dismissal of a Title VII employment discrimination action for failure to timely serve the

defendant.  820 F.2d 81 (3d Cir. 1987).  The Lovelace complaint was filed on October 29, 1985,

but service was not effected until 55 days after the 120-day deadline.  Id. at 83 (citing to then

---

    [7] Nor is the Third Circuit the only one that recognizes that a failure of counsel to secure proper service is insufficient to show good cause in order to grant an extension beyond the 120-day service time limit.  In Wheat v. Airport Authority of Washoe County, 1999 WL 50879 (9th Cir. Jan. 15, 1999), the Ninth Circuit affirmed the district court's dismissal of the complaint.  Although service was only a few days beyond the 120-day time period, the court found counsel's mistake did not constitute good cause and declined to exercise its discretion to grant an extension.  Id. at *1.  In so doing, the court noted, "[W]e recognize that dismissal of this action may appear to punish an innocent client for the lawyer's mistakes...  However, a plaintiff cannot avoid dismissal by arguing that he or she is an innocent party who will be made to suffer for the errors of his or her attorney.  The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client."  Id. at *2.

Federal Rule of Civil Procedure 4(j), which is the precursor to the present Federal Rule of Civil Procedure 4(m)).[8]  Plaintiff argued that his counsel had been misled by a misrepresentation by a special process server.[9]  Id. at 83.  The district court held that this excuse did not constitute good cause sufficient to extend the 120-day limit because "the burden to ensure proper and timely service rested upon [plaintiff] and his attorney."  Id.  The Third Circuit affirmed, holding that the district court had not abused its discretion by refusing to excuse the 55-day delay of service.  In making its decision, the Third Circuit recognized that the plaintiff would "effectively be denied his day in court," since any new suit would arguably be time-barred as his "EEOC cause of action ... is subject to a 90-day time limit," but nonetheless dismissed the complaint.  Id. at 83 n.1.

More recently and in regards to the current Rule 4(m), the Third Circuit in McCurdy v. American Board of Plastic Surgery, affirmed the district court's dismissal of the plaintiff's complaint for failure to timely effect service.  157 F.3d 191 (3d Cir. 1998).  The plaintiff filed his complaint on June 10, 1996 and then an amended complaint on October 4, 1996 (id. at 192), but did not serve one of the defendants with the original and amended complaint until 20 days after the 120-day time period on the original complaint had expired.  Id. at 192.  The plaintiff then attempted to re-serve his complaint on February 7, 1997, which was four days beyond the 120-

---

[8] Prior to 1993, Rule 4(j) was drafted and interpreted to require dismissal of the action if good cause was not shown as to why the delay of service had occurred.  See, e.g., Petrucelli v. Bohringer & Ratzinger, GMBH, 46 F.3d 1298, 1304-1305 (3d Cir. 1995).  The 1993 amendment to Rule 4(j) (when the 120-day deadline was shifted to Rule 4(m)) granted the court discretion to determine whether dismissal was appropriate absent a showing of good cause.  See id.; Fed. R. Civ. P. 4(m) Advisory Committee Notes.

[9] After the alleged misrepresentation by the process server, the clerk of the district court sent counsel for Plaintiff a letter stating the court had not yet received the affidavit of proof of service and requiring defendant to be served within 15 days for the date of the clerk's letter.

day deadline from the filing of the amended complaint and four months beyond the 120-day deadline from the filing of the original complaint.

One of the issues before the Third Circuit was whether plaintiff's failure to timely serve defendant constituted a lack of personal jurisdiction. It noted that the district court had applied the Rule 4(m) two-prong inquiry established by the Third Circuit to determine whether an extension of time was appropriate. Such test is as follows:

> First, the court must determine whether good cause exists for the failure to have effected service in a timely manner. If so, the extension must be granted. If good cause has not been shown, however, the court still may grant the extension in the sound exercise of its discretion.

Id. at 196 (citing cases). The district court, in applying the first prong of the above test, determined no good cause existed for the delay as plaintiff's efforts at service had been "'half-hearted'" and "'too little, too late.'" Id. at 196. In particular, the district court considered the actual timing of the service and the lack of a justifiable reason for the lateness. Id. at 196. In regards to the second prong, the district court concluded that plaintiff had demonstrated no basis to justify the exercise of the court's discretion to grant an extension of time in which to serve the complaint. The Third Circuit agreed, noting the service attempts were untimely and plaintiff had failed to request an extension of time before the time allotted under Rule 4(m) had passed. Id. at 196. Therefore, the Third Circuit affirmed the lower court's refusal to grant plaintiff an extension of time for service and found that personal jurisdiction was lacking as to that defendant. Id. at 197.

In reaching its decision, the Third Circuit acknowledged that the statute of limitations on plaintiff's claims may have run and that although the Federal Rules were meant to be applied to promote justice, "justice also requires that the merits of a particular dispute be placed before the

court in a timely fashion." Id. at 197. Accordingly, the complaint was dismissed in its entirety as to that defendant.

Likewise, in Parker v. State of Delaware, 2000 WL 291537 (D. Del. Mar. 13, 2000), defendants sought dismissal of plaintiffs' complaint for untimely service. This Court held that plaintiffs' inaction, specifically that the summonses were not issued until five months after plaintiffs filed their complaint and that service was not effected for at least seven months after the 120-day deadline expired, constituted "flagrant noncompliance" of Rule 4(m)'s service deadline.[10] In reaching this conclusion, this Court utilized the McCurdy two-prong test to determine whether to excuse plaintiffs' dilatory service. Id. at *2. Plaintiffs argued there was good cause for the service delay, as they were attempting to exhaust their administrative remedies during that time. Id. This Court rejected plaintiffs' argument, noting:

> If plaintiffs had missed the service deadline by a mere matter of days, the court would be inclined to extend the service deadline. Here, however, plaintiffs did not even bother to cause summonses to be issued until five months after they filed their complaint.

Id. Accordingly, this Court dismissed the complaint because it lacked personal jurisdiction over defendants due to the untimely service.

Importantly, in Parker, this Court was not persuaded by plaintiffs' argument that a dismissal "would be unjust because of 'possible statute of limitations problems.'" Id. at *2. The Court noted that "the running of the limitations period does not compel the court to grant an

---

[10] Tardiness of far less time has been grounds to dismiss a complaint for failure to effect timely service. See, e.g., In re Michael W. Sheehan, 253 F.3d 507 (9th Cir. 2001) (affirming dismissal of complaint based upon finding that counsel's error of not getting complaint served until 6 days after the 120-day deadline elapsed did not constitute good cause or grounds to exercise the court's discretion to extend the deadline).

extension of the service deadline." Id. (citing Petrucelli v. Bohringer & Ratzinger, GMBH, 46 F.3d 1298, 1306 (3d Cir. 1995).

As explained, here Plaintiff's Complaint was filed on February 15, 2006. (D.I. 1). As such, service was required to be effected by June 15, 2006. Much like in Parker, the summons in the case at bar was not issued until six months after the Complaint was filed. (D.I. 6). Further, despite the clarity of Rule 4(m), service was not made until August 29, 2006 and only after prompting by the Court. (D.I. 7). As such, Plaintiff served Defendant 75 days late. Further, it is apparent from a review of the docket that Plaintiff never requested an extension of time to serve the Complaint during the 120-day service time limit. Given this egregious length of time that passed between the filing of the Complaint and its service and the inadequate excuse offered by Plaintiff's counsel, the Complaint should be dismissed.

## III. ALTERNATIVELY, A PARTIAL DISMISSAL IS APPROPRIATE BECAUSE UNDER DELAWARE STATUTORY LAW, PLAINTIFF CANNOT PURSUE HER STATE DISCRIMINATION AND RETALIATION CLAIMS IN FEDERAL COURT.

In 2004, the DDEA was significantly amended to grant Delaware employees the right to sue in the Delaware Superior Court for violations of the Delaware employment discrimination and retaliation statute. See 19 Del. C. §§ 712, 714. Included in the DDEA amendments were provisions mandating an election of forum and specifically that only the state court had jurisdiction over any DDEA claims. In other words, a plaintiff must choose to exercise her claims in either state or federal court, which also means choosing whether to prosecute the action as a DDEA or a Title VII action.

The DDEA makes clear the Superior Court has "jurisdiction over all proceedings brought by the charging party pursuant to § 714 of this title."[11]  19 <u>Del. C.</u> § 715.  Section 714 provides, in relevant part:

> (a)     A charging party may file a civil action **in Superior Court,** after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.
>
> (b)     The Delaware Right to Sue Notice shall include authorization for the charging party to bring a civil action under this chapter **in Superior Court** by instituting suit within 90 days of its receipt or within 90 days of receipt of a federal Right to Sue Notice, whichever is later.
>
> (c)     **The charging party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation**. A charging party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the charging party files in Superior Court and in a federal forum, the respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

(Emphasis supplied).   As such, the DDEA only grants jurisdiction for DDEA claims to the Delaware Superior Court.  Further, the law evidences a clear intent to avoid duplication of rights and remedies by virtue of the fact that the charging party is required to elect a forum in which to pursue remedies.   Section 714(c) is specifically intended to prevent a charging party from simultaneously seeking relief of his or her DDEA state laws claims and federal statute Title VII claims.

By way of background, under the DDEA, an individual is required to first file a charge with the Delaware Department of Labor before commencing an action in Superior Court.  <u>See</u> 19

---

[11]  In another example of the DDEA only bestowing the Superior Court with authority in relation to the statute, Section 715 also grants the Superior Court the authority to excuse a charging party who complied with the compulsory conciliation provisions.

Del. C. § 714(a). Pursuant to the DDEA, once a DDOL charge is filed, the DDOL investigates the state law violation.[12] The DDOL then issues a determination of whether there is "no reasonable cause" or "reasonable cause" that the employer violated the DDEA. Concurrent with the issuance of the determination, the DDOL issues a Delaware Right to Sue Notice. The Delaware Right to Sue Notice informs the charging party that, pursuant to 19 Del. C. § 714, he or she can bring suit under the DDEA within 90 days in the Superior Court.[13] The DDEA created the ability for an employee to go into Delaware Superior Court with state claims immediately following the DDOL's issuance of a determination. In the event an employee chooses to seek redress of state claims, the employee can file suit immediately after receiving the DDOL's Notice of Right to Sue and, if the Charge was dual-filed, need not wait for the EEOC to issue its decision. As such, the DDEA amendments provide another alternative option for a charging party.[14]

---

[12] To the extent a simultaneous Title VII Charge is filed with the EEOC, the DDOL is empowered to investigate the allegations of federal violations as well. See 42 U.S.C. §§ 2000(e)-4(g)(1). If an employer has "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" (42 U.S.C. § 2000e(b)), an employee may choose to simultaneously dual file his or her Title VII charge with the EEOC when the DDOL charge is filed. (See, e.g., Exhibit A (Here, Plaintiff checked the box which indicated she wished to have the EEOC charge filed simultaneously with the DDOL)).

[13] The Delaware Right to Sue Notice is DOL form C-13 and is therefore publicly available should the Court be interested. Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). As such, this Court can take judicial notice of such information without compromising the status of this motion to dismiss or converting it into one for summary judgment.

[14] Nevertheless, employees of small employers with between four and fourteen employees have no Title VII federal rights. As such, employees of small employers have only one avenue of relief, to bring an action in state court. The DDEA amendments filled the prior enforcement void for these employees.

Moreover, the intent becomes even clearer when examining the relief sections of the DDEA. Only the Superior Court is authorized to provide remedies for violations of the DDEA. Consequently, the DDEA does not authorize this Court to hear civil suits or give relief under the DDEA. 19 Del. C. § 715(1). Notably, the types of relief are the very same types of damages as are provided in Title VII which evidences that a plaintiff is entitled to damages from either statute, but not both. Section 715(1) provides:

> (1) **Superior Court shall have the authority to provide** the following relief, including but not limited to:
>
> a. Order the respondent to cease and desist or modify its existing employment policies;
>
> b. Order the respondent to hire, reinstate or promote the charging party;
>
> c. Order the payment of compensatory damages, including but not limited to general and special damages, punitive damages when appropriate, not to exceed the damage awards allowable under Title VII of the Civil Rights Act of 1964, as amended, provided that for the purposes of this subchapter, employers with 4-14 employees shall be treated under Title VII's damage award as an employer having under 50 employees; and
>
> d. Order the costs of litigation and reasonable attorney's fees to the prevailing party.

19 Del. C. § 715(1) (emphasis supplied).

Further, the above outlined plain and common-sense reading of the DDEA is confirmed by the stated intent of the Delaware legislature in passing the DDEA.[15] The synopsis of Senate

---

[15] Although in a different context, the Third Circuit, in affirming the dismissal of a state claim of breach of the implied duty of good faith in a Title VII action, expressly recognized "in 2004 the Delaware legislature amended 19 Del. C. § 710 et seq., which prohibits discrimination in employment practices, in order to clarify that this statute was the 'sole remedy' for an aggrieved employee 'to the exclusion of all other remedies.'" See EEOC v. Avecia Inc., 2005 U.S. App. LEXIS 22157, at *7-8 (3d Cir. Oct. 13, 2005).

-14-

Bill 154, attached hereto as Exhibit C, which amended the procedures and rights for state discrimination and retaliation claims, clearly provides, in relevant part:

> This bill confirms that Chapter 7 is the **exclusive and sole** remedy for employment discrimination claims requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in <u>Schuster v. Derocil</u>, 775 A.2d 1029 (2001).

***

> Sections 712, 714 and 715 have been repealed in their entirety and rewritten to accomplish the goals of initially pursuing informal methods of resolution through mediation and conciliation **and then permitting civil actions in Superior Court**.

Senate Bill No. 154, 142nd General Assembly (DE 2004).

Lastly, federal courts are courts of limited jurisdiction and only have the authority to hear cases where jurisdiction has been specifically conferred to them. <u>See, e.g.,</u> <u>Lessard v. City of Allen Park</u>, 247 F. Supp. 2d 843 (E.D. Mich. 2003) ("Federal courts are courts which may exercise only those powers authorized by Constitution and federal statute."). The law of a state cannot grant a federal court jurisdiction. <u>See, e.g.,</u> <u>Ex parte McNiel</u>, 80 U.S. 236, 243 (U.S. 1871) ("A State law cannot give jurisdiction to any Federal court."). As such, the DDEA cannot confer such jurisdiction on this Court for state law discrimination and retaliation claims.

Therefore, Defendant respectfully requests that this Court dismiss Plaintiff's state law discrimination and retaliation claims as this Court lacks the jurisdiction to hear them.

## CONCLUSION

WHEREFORE, for the reasons explained herein, Plaintiff's Complaint against Household must be dismissed in its entirety for lack of personal jurisdiction due to Plaintiff's failure to timely serve Defendant. Alternatively, Plaintiff's state law claims against Defendant must be dismissed as this Court lacks jurisdiction to hear these claims.

Kelly A Green

Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Kelly A. Green (#4095)
Green@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
302-651-7701
  Attorneys for Defendant

Dated: September 18, 2006

-16-

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2006, I electronically filed the foregoing Opening

Brief in Support of Household Finance Corporation's Motion to Dismiss with the Clerk of Court

using CM/ECF which will send notification of such filing to the following and on September 18,

2006, forwarded copies of the same to the following in the manner indicated:

### VIA HAND DELIVERY

Donna L. Harris, Esquire
Cross & Simon, LLC
913 N. Market Street, 11th Floor
P. O. Box 1380
Wilmington, Delaware 19899

### VIA FIRST CLASS MAIL

Johnny J. Butler, Esquire
Yvonne Barnes Montgomery, Esquire
Booth & Tucker, LLP
One Penn Center at Suburban Station
161 JFK Blvd., Suite 1700
Philadelphia, PA 19103

Jennifer C. Jauffret (#3689)
Jauffret@rlf.com
Kelly A. Green (#4095)
Green@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Attorneys for Defendant

RLF1-3059532-1

# EXHIBIT A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

ENTER CHARGE NUMBER

☐ FEPA  0.3/3/25
☐ EEOC  17CA400170

**Delaware Department of Labor**                     and EEOC

(State, or local Agency, if any)

| | |
|---|---|
| NAME (Indicate Mr , Mrs , Ms)<br>Sharon Rozier-Phillips | HOME TELEPHONE NO. (Include Area Code)<br>(302) 838-5663 |

| | | |
|---|---|---|
| STREET ADDRESS<br>3904 Cindy Drive  Newark DE 19702  NCC | CITY, STATE AND ZIP CODE | COUNTY |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

| NAME<br>Household Finance Corporation | NO. OF EMPLOYEES OR<br>MEMBERS 15+ | TELEPHONE NUMBER (Incl. Area Code)<br>(302) 836-9095 |
|---|---|---|

| STREET ADDRESS<br>1144 Pulaski Highway, Bear DE 19702 | CITY, STATE AND ZIP CODE |
|---|---|

| NAME<br>Household Finance Corporation | TELEPHONE NUMBER  (Include Area Code) |
|---|---|

| STREET ADDRESS<br>100 North PointCircle, Suite 206, Seven Field PA 16046  Attn: Robert McMichael | CITY, STATE AND ZIP CODE |
|---|---|

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE

☐ RETALIATION  ☐ DISABILITY  ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE |
|---|
| EARLIEST    10/1/2003 |
| LATEST      12/5/2003 |
| ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I am a female who began employment with Respondent as a Senior Accoun. Executive in September 2002 at Respondent's New Castle, Delaware and later at Bear, Delaware  locations. In or about September 2003 Terry Parker (male) became my branch manager. In or about October 2003, my co-workers and I were talking, Parker then said because of my telephone voice, I had to be gorgeous and he wanted to "smack that [my] ass." Parker would continually make sexual remarks about female customers and employees almost daily He even said our business was to "sell sex, not loans.". On November 21 Parker told me was on the phone with John Holmes [porn star] and gestured toward his privates with me. On November 24 I went out on disability because of this hostile work environment.

Management has not given any explanation for its action.

I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Delaware Discrimination in Employment Act, as amended, because: 1. The obscene gestures, derogatory comments, humiliation and other harassment were all directed at my gender. 2. Parker treats other female employees in a similar fashion, but does not subject male employees to such harassment.

| | |
|---|---|
| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | SIGNATURE OF COMPLAINANT<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date         Charging Party (Signature) | NOTARY - (When necessary to meet State and Local Requirements)<br><br>Subscribed and sworn to before me this date         (Day, month, and year) |

EEOC FORM 5
REV 6/92

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

# EXHIBIT B

**STATE OF DELAWARE**
**DEPARTMENT OF LABOR**
**DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION UNIT**

---

Ms. Sharon Rozier-Phillips                              State Case No:  0312175
c/o Booth & Tucker, LLP
230 South Broad Street, 2nd Floor
Philadelphia, PA  19102
ATT:  Johnny J. Butler, Esquire

vs.

Household Finance Company
100 Northpointe Circle, Suite 206
Seven Fields, PA  16046
ATT:  Robert McMichael, HR Manager

---

**FINAL DETERMINATION AND RIGHT TO SUE NOTICE**

Pursuant to 19 <u>Del. C.</u> § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

### *No-Cause Determination and Dismissal with Corresponding Right to Sue Notice.*

In this case, the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred.  The Department hereby issues a No-Cause Determination and Dismissal and provides the Charging Party with a Delaware Right to Sue Notice.

This No Cause determination is based on the following facts:

Charging Party failed to provide sufficient evidence that she suffered adverse action because of the alleged sexual harassment that she endured from her male supervisor.  In addition, Charging Party's witnesses did not corroborate her allegations.

Respondent provided sufficient evidence that after receiving Charging Party's complaint of sexual harassment against her and her co-worker (Ms. Byers) on 11/26/04, Respondent conducted a prompt internal investigation.  Consequently, the alleged harasser received corrective discipline from Respondent, which resulted in his immediate transfer on 12/15/04.  Finally, Respondent also provided sufficient evidence that both Charging Party and her co-worker (Ms. Byers) were made aware upon hire of the company policy regarding reports of discrimination with the use of their internal 1-800 number to ensure anonymity.

See the attached Notice of Rights.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Unit.

_____                    _____
Date issued                              Julie K. Cutler, Administrator
*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-12NC : 10/04

# EXHIBIT C



SPONSOR:  Sen. Marshall & Rep. Lofink

DELAWARE STATE SENATE

142nd GENERAL ASSEMBLY

SENATE BILL NO. 154

AN ACT TO AMEND TITLE 19 OF THE DELAWARE CODE RELATING TO DISCRIMINATION IN EMPLOYMENT.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE (Two-thirds of all members elected to each house thereof concurring therein):

Amend Subchapter II of Chapter 7, Title 19 of the Delaware Code, "Discrimination in Employment" by striking said Subchapter in its entirety and substituting in lieu thereof the following:

"Subchapter II.  Discrimination in Employment.

§ 710. Definitions.

For the purposes of this subchapter:

(1) 'Age' as used in this subchapter means the age of forty (40) or more years of age.

(2) 'Employee' means an individual employed by an employer, but does not include:

a. Any individual employed in agriculture or in the domestic service of any person,

b. Any individual who, as a part of that individual's employment, resides in the personal residence of the employer,

c. Any individual employed by said individual's parents, spouse or child, or

d. Any individual elected to public office in the State or political subdivision by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the merit service rules or civil service rules of the State government or political subdivision.

SD : FJM : kbs
0211420018

(3) 'Employer' means any person employing four (4) or more employees within the State at the time of the alleged violation, including the State or any political subdivision or board, department, commission or school district thereof.

(4) 'Employment agency' means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

(5) 'Genetic information' for the purpose of this chapter means the results of a genetic test as defined in § 2317(a)(3) of Title 18.

(6) 'Job related and consistent with business necessity' means the condition in question renders the individual unable to perform the essential functions of the position that such individual holds or desires. This includes situations in which the individual poses a direct threat to the health or safety of himself/herself or others in the workplace.

(7) 'Labor organization' includes any organization of any kind, any agency or employee representation committee, group, association or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours or other terms or conditions of employment, any conference, general committee, joint or system board or joint council so engaged which is subordinate to a national or international labor organization.

(8) 'Person' includes 1 or more individuals, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy or receivers.

(9) 'Religion' as used in this Subchapter includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that the employer is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

(10) 'Secretary' means the Secretary of the Department of Labor or the Secretary's designee.

(11) 'Charging Party' means any individual or the Department who initiates proceedings by the filing of a verified Charge of Discrimination, and who preserves a cause of action in Superior Court by exhausting the

SD : FJM : kbs
0211420018

administrative remedies pursuant to the provisions of §714.

(12) 'Respondent' means any person named in the Charge of Discrimination, including but not limited to employers, employment agencies, labor organizations, joint labor-management committees, controlling apprenticeship or other training programs including on-the-job training programs.

(13) 'Mediation' for the purposes of this chapter refers to an expedited process for settling employment disputes with the assistance of an impartial third party prior to a full investigation.

(14) 'Conciliation' for the purposes of this chapter refers to a process which requires the appearance of the parties after a full investigation resulting in a final determination of reasonable cause.

(15) 'No Cause Determination' means that the Department has completed its investigation and found that there is no reasonable cause to believe that an unlawful employment practice has occurred or is occurring. A no cause determination is a final determination ending the administrative process and provides the Charging Party with a corresponding Delaware Right to Sue Notice.

(16) 'Reasonable Cause Determination' means that the Department has completed its investigation and found reasonable cause to believe that an unlawful employment practice has occurred or is occurring. A reasonable cause determination requires the parties' good faith efforts in conciliation.

(17) 'Delaware Right to Sue Notice' for the purposes of this chapter refers to a final acknowledgement of the Charging Party's exhaustion of the administrative remedies provided herein and written notification to the Charging Party of a corresponding right to commence a lawsuit in Superior Court.

§ 711. Unlawful employment practices; employer practices.

(a) It shall be an unlawful employment practice for an employer to:

(1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin; or

(2) Limit, segregate or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin.

(b) It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for

Page 3 of 2

employment or otherwise to discriminate against any individual because of race, marital status, genetic information, color, age, religion, sex or national origin or to classify or refer for employment any individual on the basis of race, marital status, genetic information, color, religion, age, sex or national origin.

(c) It shall be an unlawful employment practice for a labor organization to:

(1) Exclude or expel from its membership or otherwise to discriminate against any individual because of race, marital status, genetic information, color, age, religion, sex or national origin;

(2) Limit, segregate or classify its membership or to classify or fail or refuse to refer for employment any individual in any way which would deprive or tend to deprive any individual of employment opportunities or would limit such employment opportunities or otherwise adversely affect the individual's status as an employee or as an applicant for employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin; or

(3) Cause or attempt to cause an employer to discriminate against an individual in violation of this section.

(d) It shall be an unlawful employment practice for any employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual because of race, marital status, genetic information, color, age, religion, sex or national origin in admission to or employment in any program established to provide apprenticeship or other training.

(e) It shall be an unlawful employment practice for an employer, employment agency, labor union or joint labor-management committee controlling apprenticeship or other training or retraining, including on the job training programs to intentionally collect, directly or indirectly, any genetic information concerning any employee or applicant for employment, or any member of their family, unless:

(1) It can be demonstrated that the information is job related and consistent with business necessity; or

(2) The information or access to the information is sought in connection with the retirement policy or system of any employer or the underwriting or administration of a bona fide employee welfare or benefit plan.

(f) It shall be an unlawful employment practice for any employer, employment agency, labor organization

Page 4 of 2

or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discharge, refuse to hire or otherwise discriminate against any individual or applicant for employment or membership on the basis of such person's race, marital status, color, age, religion, sex or national origin, because such person has opposed any practice prohibited by this subchapter or because such person has testified, assisted or participated in any manner in an investigation, proceeding, or hearing to enforce the provisions of this subchapter

(g) Notwithstanding any other provision of this subchapter:

(1) It shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual or for an employer, labor organization or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program on the basis of religion, genetic information, age, sex or national origin in those certain instances where religion, genetic information, age, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise; and

(2) It shall not be an unlawful employment practice for a school, college, university or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled or managed by a particular religion or by a particular religious corporation, association or society or if the curriculum of such school, college, university or other educational institution or institution of learning is directed toward the propagation of a particular religion

(h) Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation or different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, marital status, genetic information, color, age, religion, sex or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not

SD : FJM : kbs
0211420018

designed, intended or used to discriminate because of race, marital status, genetic information, color, religion, age, sex or national origin.

(i) Nothing contained in this subchapter as it applies to discrimination because of age or sex shall be interpreted to affect or interfere with the retirement policy or system of any employer or the underwriting or administration of a bona fide employee welfare or benefit plan, provided that such policy, system or plan is not merely a subterfuge to evade the purpose of this subchapter.

(j)(1) Nothing in this subchapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age, and who, for the 2-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit sharing, savings or deferred compensation plan, or any combination of such plans, of the employer of such an employee, which equals, in the aggregate, at least $44,000.

(2) In applying the retirement benefit test of paragraph (1) of this subsection, if any such retirement benefit is in a form other than a straight life annuity (with no ancillary benefits), or if employees contribute to any such plan or make rollover contributions, such benefit shall be adjusted in accordance with regulations prescribed by the Secretary, United States Department of Labor, pursuant to 29 U.S.C. § 631(c)(2), so that the benefit is the equivalent of a straight life annuity (with no ancillary benefits) under a plan to which employees do not contribute and under which no rollover contributions are made.

§ 712. Enforcement provisions; powers of the Department; administrative process.

(a) The Department of Labor is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in §§ 711, 723 and 724 of this title. In connection with the performance of its duties, the Department may:

(1) investigate employment practices by permitting the Department to enter any place of employment at reasonable times; inspect and copy records or documents in the possession of the employer, the employment agency or labor organization; administer oaths, certify to official acts, take and cause to be taken depositions of witnesses; issue subpoenas compelling the attendance and testimony of witnesses and the production of papers, books, accounts, payrolls, documents, and records;

(2) make, revise or rescind such rules or regulations necessary or appropriate to administer or

SD : FJM : kbs
0211420018

enforce this chapter in accordance with the provisions of 29 Del. C. § 10161 (b) of the Delaware Code;

(3) commence civil actions in Superior Court for violations of this chapter, any published regulations or for civil penalties provided herein.

(b) The Department shall have jurisdiction over all cases arising under this chapter, affording review and oversight of employment practices in Delaware. The Department shall endeavor to eliminate unlawful discrimination in employment through its administrative process set forth below. This subchapter shall afford the sole remedy for claims alleging a violation of this chapter to the exclusion of all other remedies. Upon termination of the administrative process by the Department, the Charging Party may institute a civil action in Superior Court of the State of Delaware pursuant to §§ 714,715.

(c) The administrative process requires the following:

(1) Statute of limitation and filing procedure. Any person claiming to be aggrieved by a violation of this chapter shall first file a Charge of Discrimination within 120 days of the alleged unlawful employment practice or its discovery, setting forth a concise statement of facts, in writing, verified and signed by the Charging Party. The Department shall serve a copy of the verified Charge of Discrimination upon the named Respondent by certified mail. The Respondent may file an answer within twenty (20) days of its receipt, certifying that a copy of the answer was mailed to the Charging Party at the address provided.

(2) Preliminary findings and recommendations. The Department shall review the submissions within sixty (60) days from the date of service upon the Respondent and issue preliminary findings with recommendations. The preliminary findings may recommend: (i) dismissing the Charge unless additional information is received which warrants further investigation; (ii) referring the case for mediation requiring the parties' appearance; or (iii) referring the case for investigation

(3) Final determinations upon completion of investigation. After investigation, the Department shall issue a Determination of either "Reasonable Cause" or "No Reasonable Cause" to believe that a violation has occurred or is occurring. All cases resulting in a "Reasonable Cause" Determination will require the parties to appear for compulsory conciliation. All cases resulting in a "No Cause" Determination will receive a corresponding Delaware Right to Sue Letter.

(4) Confidentiality of the Department's process. The Department shall not make public the

Page 7 of 2

SD : FJM : kbs
0211420018

charge of discrimination or information obtained during the investigation of a charge. This provision does not apply to disclosures made to the parties, their counsel, or witnesses where disclosure is deemed necessary or appropriate. Nothing said or done during and as a part of the mediation or conciliation efforts may be made public by the Department, its officers or employees or used by any party as evidence in a subsequent proceeding without the written consent of the persons concerned

(5) End of administrative process. In all cases where the Department has dismissed the Charge, issued a No Cause Determination or upon the parties failed conciliation efforts, the Department shall issue a Delaware Right to Sue Notice, acknowledging the Department's termination of the administrative process. Once the Department has issued its preliminary findings pursuant to subsection (2), the Department, in its discretion, may grant a Delaware Right to Sue Notice to a Charging Party.

§ 713. Civil action by the Attorney General; complaint.

(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter or subchapter III of this chapter and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the Court of Chancery by filing with it a complaint:

(1) Signed by the Attorney General (or in the Attorney General's absence the Chief Deputy Attorney General);

(2) Setting forth facts pertaining to such pattern or practice; and

(3) Requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as the Attorney General deems necessary to insure the full enjoyment of the rights herein described

(b) The Court of Chancery shall have jurisdiction over proceedings brought pursuant to this section.

§ 714  Civil action by the Charging Party; Delaware Right to Sue Notice; election of remedies.

(a)       A Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

(b)       The Delaware Right to Sue Notice shall include authorization for the Charging Party to bring a civil

SD : FJM : kbs
0211420018

action under this Chapter in Superior Court by instituting suit within ninety (90) days of its receipt or within ninety (90) days of receipt of a Federal Right to Sue Notice, whichever is later.

(c)    The Charging Party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation.  A Charging Party is barred by this election of remedies from filing cases in both Superior Court and the federal forum.  If the Charging Party files in Superior Court and in a federal forum, the Respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

§ 715. Judicial remedies; civil penalties.

Superior Court shall have jurisdiction over all proceedings brought by the Charging Party pursuant to § 714. Superior Court may excuse a Charging Party who has complied with the compulsory conciliation provisions of this chapter from the compulsory arbitration provisions of Superior Court rule.

(a)    Superior Court shall have the authority to provide the following relief, including but not limited to: (1) order the Respondent to cease and desist or modify its existing employment policies; (2) order the Respondent to hire, reinstate or promote the Charging Party; (3) order the payment of compensatory damages, including but not limited to general and special damages, punitive damages when appropriate, not to exceed the damage awards allowable under Title VII of the Civil Rights Act of 1964, as amended, provided that for the purposes of this subchapter, employers with 4-14 employees shall be treated under Title VII's damage award as an employer having under 50 employees; and (4) order the costs of litigation and reasonable attorney's fees to the prevailing party.

(b)    In any action brought by the Department for violation of the retaliation provision of section 711(f), the Court shall fine the employer not less than $1,000 nor more than $5,000 for each violation, in addition to any liability for damages.

§ 716. Posting of notices; penalties.

(a) Every employer, employment agency and labor organization, as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, and applicants for employment are customarily posted, a notice to be prepared or approved by the Department setting forth excerpts from or summaries of the pertinent provisions of this subchapter and subchapter III of this chapter and information pertinent to the filing of a complaint.

SD : FJM : kbs
0211420018

(b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense.

§ 717. Veterans' special rights or preference.

Nothing contained in this subchapter or subchapter III of this chapter shall be construed to repeal or modify any state or local law creating special rights or preferences for veterans.

§ 718. Short title, effective date, savings clause.

(a) This subchapter may be cited as the "Discrimination in Employment Act."

(b) This Act shall become effective sixty (60) days after its enactment into law.

(c) This Act does not affect any cause of action or the remedy provided therefor if such cause of action accrued and suit was instituted thereon prior to the effective date of this Act.

## SYNOPSIS

This bill eliminates the Equal Employment Review Board, and creates a corresponding Delaware Right to Sue in Superior Court after exhausting Administrative remedies. This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in Schuster v. Derocili, 775 A. 2d 1029 (2001).

Some definitions have been added to section 710, specifically new terms such as "No Cause Determination"; "Reasonable Cause Determination"; "Charging Party"; "Respondent"; "Delaware Right to Sue Notice"; "Mediation"; and "Conciliation". Sections 712, 714 and 715 have been repealed in their entirety and rewritten to accomplish the goals of initially pursuing informal methods of resolution through mediation and conciliation and then permitting civil actions in Superior Court.

Author: Senator Marshall

SD : FJM : kbs
0211420018