**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SHARON ROZIER PHILLIPS : | CIVIL NO. 06-100-JJF |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| HOUSEHOLD FINANCE  CORPORATION : | |
| CORPORATION : | |
| : | |
| Defendant. : | |
| : | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANT HOUSEHOLD FINANCE CORPORATION AND BRIEF IN
SUPPORT OF REQUEST FOR EXTENSION OF TIME TO EFFECT SERVICE**

Donna L. Harris (#3740)
dharris@crosslaw.com
Cross & Simon, LLC
913 N. Market Street, 11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
302-777-4200
302-777-4224 - facsimile

Johnny J. Butler
jbutler@boothtucker.com
Yvonne Barnes Montgomery
ymontgomery@boothtucker.com
Booth &Tucker, LLP
1617 JFK Boulevard, Suite 1700
Philadelphia, PA 19103
215-875-0609
215-875-8143 (facsimile)

Attorneys for Plaintiff

Dated: October 2, 2006

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ……………………………………………    ii

NATURE AND STAGE OF PROCEEDINGS ………………………    1

SUMMARY OF ARGUMENT …………………………………………..    3

COUNTERSTATEMENT OF MATERIAL FACTS …………………..    4

ARGUMENT ……………………………………………………………...    6

    A.    Legal Standard ………………………………………...    6

    B.    Good Cause Exists for Plaintiff's Failure to Perfect Service
        Upon Defendant within 120 Days ………………………    7

        1.    Plaintiff Made a Reasonable Attempt to
                Effectuate Service …………………………………    8

        2.    Defendant is Not Prejudiced by the
                Late Service …………………………………………..    9

        3.    Plaintiff Has Requested an Enlargement of Time to
                Effectuate Service …………………………………    10

    C.    In the Absence of a Finding of Good Cause, the Court
        Should Exercise its Discretion to Extend the Service
        Deadline ………………………………………………….    11

    D.    this Court Has Supplemental Jurisdiction over Plaintiff's
        State Discrimination and Retaliation Claims, and Therefore
        The Claims Should Not Be Dismissed …………………..    15

CONCLUSION ………………………………………………………….    18

i

# TABLE OF AUTHORITIES

**Cases**

Boley v. Kaymark,
123 F.3d 756 (3d Cir. 1997) ........................................................................ 7, 9

Carter v. Marmon/Keystone Corp.,
No. 05-311-KAJ, 2006 U.S. Dist. LEXIS 21094 (D. Del. April 7, 2006) ........................ 14

Cresswell v. Walt Disney Prod.,
677 F. Supp. 284 (M. D. Pa. 1987) ............................................................... 10

EEOC v. Avecia,
No. 04-3396, 2005 U.S. App. LEXIS 22157 (3d Cir. October 13, 2005) .................16, 17

EEOC v. E.I. DuPont de Nemours & Co.,
373 F. Supp. 1321 (D. Del. 1974), aff'd, 516 F.2d 1297 (3d Cir. 1975);....................... 14

Farrace v. United States,
220 F.R.D. 419 (D. Del. 2004) .................................................................12, 14

Garrison v. Town of Bethany Beach,
131 F. Supp. 2d 585 (D. Del. 2001) ............................................................... 12

Hodges v. Greiff,
2001 U.S. Dist. LEXIS 25039, 2002 WL 34368774, *2 (E.D. Pa. Nov. 19, 2001) ......... 13

In re: Submicron Systems Corporation v. Stokes Electrical Supply,
2004 U.S. Dist. LEXIS 19170 (D. Del. Sept. 21, 2004) ........................................9, 12,15

Jones v. School. Dist. of Phila.,
198 F.3d 403 (3d Cir. 1999) ....................................................................... 13

Lindsay v. Kvortek, 865 F.Supp. 264
(W.D. Pa. 1994) ..................................................................................... 15

McCurdy v. Am. Bd. of Plastic Surgery,
157 F.3d 191 (3d Cir. 1998)) ..................................................................... 7, 8

MCI Telecomm. Corp. v. Teleconcepts, Inc.,
71 F.3d 1086 (3d Cir. 1995) ..................................................................... 6-8

Mosel v. Hills Dept. Store, Inc.,
789 F.2d 251 (3d Cir. 1986) ...................................................................... 12

Mullane v. Central Hanover Bank & Trust Co.,
339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950)................................................. 10

Nat'l Union Fire Ins. Co. v. Barney Assocs.,
130 F.R.D. 291 (S.D.N.Y. 1990) ..................................................................................... 9

Nichols v. Bennett Detective & Protective Agency, Inc.,
No. 05-55-KAJ, 2006 U.S. Dist. LEXIS 35491 (D. Del. May 31, 2006) ......................... 18

Petrocelli v. DiamlerChrysler Corp.,
No. 04-943-KAJ, 2006 U.S. Dist. LEXIS 11972 (D. Del. March 22, 2006) .................... 17

Petrucelli v. Bohringer & Ratzinger,
46 F.3d 1298 (3d Cir. 1995) ..................................................................................... 7, 11

Ransom v. Marrazzo,
848 F.2d 398 (3d Cir. 1988) ........................................................................................... 7

Ritter v. Cooper,
2003 U.S. Dist. LEXIS 23544, 2003 WL 23112306 (D. Del. Dec. 30, 2003) ................ 13

Sansom Committee v. Lynn,
735 F.2d 1535 (3d Cir. 1984) ....................................................................................... 15

Schuster v. Derocili,
775 A.2d 1029 (Del. 2001) ........................................................................................... 16

United States v. Nuttall,
122 F.R.D. 163 (D. Del. 1988) ........................................................................................ 9

University of Tennessee v. Elliott,
478 U.S. 788, 796, 92 L. Ed. 2d 635, 106 S. Ct. 3220 (1986)....................................... 14

**Statutes**

19 Del. C. § 710 ...................................................................................................... 1, 15

32 U.S.C. § 1367 .......................................................................................................... 15

42 U.S.C. § 2000e ........................................................................................................... 1

**Rules**

Fed. R. Civ. P. 4(m) ................................................................. 6-7, 9-10

Fed. R. Civ. P. 12(b)(5) ................................................................. 6

Fed. R. Civ. P. 6(b)(2) ................................................................. 10

Fed.R.Civ.P. 12(b)(6) ................................................................. 7

**Other Authorities**

Charles A. Wright & Arthur R. Miller,
Federal Practice & Procedure § 3567 (1975) ................................................. 15

Senate Bill No. 154, 142nd General Assembly (DE 2004)……………………………17

## NATURE AND STAGE OF PROCEEDINGS

On February 15, 2006, the plaintiff, Sharon Rozier Phillips ("Plaintiff") filed an employment discrimination action against the defendant, Household Finance Corporation ("Defendant") or ("HFC") as a result of Defendant's unlawful gender discrimination, sexual harassment and retaliation during Plaintiff's employment pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Delaware Discrimination in Employment Act, Del. Code Ann., 19 Del. C. § 710, *et seq.* ("DDEA") (the "Complaint) (See Exhibit "A" for a copy of the Complaint.)

On March 21, 2006, and pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, Plaintiff served Defendant via certified mail, return receipt requested with the Complaint and a Waiver of Service form.  Pursuant to Rule 4(d), Plaintiff requested that Defendant execute the Waiver to avoid the unnecessary costs of personal service. On or about March 23, 2006, Defendant received the Complaint and Waiver of Service form.[1] (See Exhibit "B" for a copy of executed postal mail receipt.)

When the mail receipt was returned by the postal service, Plaintiff's file was inadvertently marked as having received the executed Waiver of Summons form instead of having received the mail receipt only.  Based on this inadvertent error, Plaintiff's counsel mistakenly believed that service of the Summons and Complaint had been done pursuant to Rule 4(d).

---

[1]  Defendant has not disputed receipt of the Complaint and Waiver of Summons form served on March 21, 2006.

During the week of August 21, 2006, Plaintiff's counsel realized that the Waiver of Summons had not in fact been executed and returned by Defendant and began the process of having Defendant personally served with a Summons and Complaint.

On August 23, 2006, this Court issued an Order for Plaintiff to show cause why the Court should not dismiss the within action for failure to prosecute within twenty (20) days. (D.I. 5). On August 25, 2006 a Summons was issued by the Clerk of Court. (D.I. 6). On August 29, 2006, formal service of the Summons and Complaint was made on Defendant. (D.I. 7). By way of letter brief dated September 7, 2006, Plaintiff responded to the Court's Order to show cause and requested that the Court "relieve Plaintiff of the consequences of Rule 4(m)" by enlarging the time for Plaintiff to serve Defendant with the Complaint and Summons. On September 18, 2006, Defendant filed its Motion to Dismiss currently before the Court. (D.I. 8, 9). Plaintiff herein timely files her response in opposition to the motion and formally moves this Court for an extension of time to perfect service on Defendant.

## <u>SUMMARY OF ARGUMENT</u>

1.    Because good cause exists for Plaintiff's failure to timely effect service on Defendant, the Court is required to grant an extension of time for service of process in accordance with Rule 4(m), and therefore deny Defendant's Motion to Dismiss.

2.    In the absence of good cause, the Court should exercise its discretion to extend the service deadline because Plaintiff acted reasonably in attempting to effect service and Defendant will not be prejudiced by an extension of the service deadline because it had knowledge of the instant action and had received the Complaint as early as March 23, 2006.

3.    Defendant's Motion for Partial Dismissal pursuant to Rule 12(b)(6) should be dismissed as the exercise of supplemental jurisdiction over Delaware state law employment discrimination claims by the federal district court is consistent with the provisions of relevant statutory and common law.

## COUNTERSTATEMENT OF MATERIAL FACTS

Plaintiff began working as a Senior Account Executive at HFC in September 2002.  (Complaint ¶ 18).  From September 2002, until October 2003, a month after Terry Parker became Plaintiff's immediate supervisor, Plaintiff's work performance was recognized by HFC as being superior.  (Complaint ¶¶ 20-23).  From October 2003 until the time she was forced to resign from her employment at HFC, Mr. Parker subjected Plaintiff, and other women[2], to unwelcome sexual harassment, on an almost daily basis. (Complaint ¶ 24). Plaintiff rebuffed Mr. Parker's sexual suggestions and harassment and asked him to stop, a request Mr. Parker refused. (Complaint ¶ 30). Mr. Parker consistently reminded Plaintiff that he was her supervisor with the power to negatively affect her work opportunities.  (Complaint ¶ 32).   In fact, because Plaintiff did not respond favorably to Mr. Parker's unwelcomed sexual innuendo and advances, Mr. Parker subjected Plaintiff to unfair work scrutiny and retaliation, including failing to process Plaintiff's customer documents, which made it impossible to perform her job duties and receive the commissions to which she was entitled pursuant to HFC protocols and practices.  (Complaint ¶ ¶ 34-35).  Plaintiff and another female co-worker, who was also sexually harassed by Mr. Parker, complained to HFC about Mr. Parker's unwelcome, sexually harassing conduct and retaliation.  (Complaint ¶ 37).  HFC did nothing in response to their

---

[2]   In fact, upon information and belief, another former HFC female employee, Felicia Byers, is currently litigating in this Court gender discrimination and retaliation claims against HFC resulting from Mr. Parker's sexually harassing treatment and retaliation while employed at HFC.

complaints.  (Complaint ¶ 38).  Because of HFC's failure to respond or take any corrective action to address Plaintiff's concerns, Plaintiff filed a charge of Discrimination with the Delaware Department of Labor ("DDOL").  At some point thereafter, Mr. Parker was simply transferred to another HFC location. (Complaint ¶ 39).

**ARGUMENT**

**A.    Legal Standard**

Pursuant to Rule 12(b)(5), Defendant has moved to dismiss the Complaint because Plaintiff failed to execute personal service upon it in accordance with Federal Rule of Civil Procedure 4(m).  Moreover, Federal Rule of Civil Procedure 12(b)(5) states that the defense of insufficiency of service of process may be raised by motion.  Fed. R. Civ. P. 12(b)(5).

Specifically, Rule 4(m) states, in relevant part, that:

> [i]f the service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The determination whether to extend time to effect personal service pursuant to Rule 4(m) involves a two-step inquiry.  Initially, the court must determine whether good cause exists for the plaintiff's failure to effect timely service.  MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1098 (3d Cir. 1995).  If good cause exists, the court must grant the extension.  Id.  If good cause does not exist, the court then must consider whether to grant a discretionary extension of time in the interest of justice.  Id.

Alternatively, Defendant puts forth a Motion for Partial Dismissal of the state discrimination and retaliation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) provides for dismissal when the

complaint fails to state a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  If the facts plead in the plaintiff's complaint, and the reasonable inferences there from, are legally sufficient, this Court must deny the defendant's motion.  Id.

**B.      Good Cause Exists for Plaintiff's Failure to Perfect Personal Service upon  Defendant within 120 Days.**

The determination of whether to extend time to effect personal service pursuant to Rule 4(m) involves a two-step inquiry.  Initially, the court must determine whether good cause exists for the plaintiff's failure to effect timely service.  MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1098 (3d Cir. 1995).  If good cause exists, the court must grant the extension.  Id.  If good cause does not exist, the court then must consider whether granting the extension is in the interest of justice.  Id.

The Third Circuit requires district courts to extend the time for service under Rule 4(m) where the plaintiff can demonstrate "good cause" for failing to comply.  McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998).  If good cause exists, the extension must be granted. Boley v. Kaymark, 123 F.3d 756, 758 (3d Cir. 1997); see also Fed. R. Civ. P. 4(m).  "'Good cause' . . . requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d. Cir. 1995) (citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d

7

1298, 1312 (3d Cir. 1995) (Becker, J., concurring in part and dissenting in part)).

Further, the Third Circuit has considered three factors when determining whether good cause exists: "1) the reasonableness of the plaintiff's efforts to serve; 2) whether the defendant is prejudiced by the lack of timely service; and 3) whether the plaintiff moved for an enlargement of the time to serve." See MCI, 71 F.3d at 1097.

        1.      <u>Plaintiff Made a Reasonable Attempt to Effectuate Service</u>

With respect to the first factor, in the present case, Plaintiff took reasonable and specific steps to serve process upon Defendant. Plaintiff served the Complaint and a Waiver of Summons form on Defendant on March 23, 2006, months before the 120 day service deadline expired. Unfortunately, when the delivery receipt was returned, Plaintiff's file was marked as service having been perfected, instead of only noting that the Complaint and Waiver of Summons form had been received by Defendant. Defendant relies on the Third Circuit's holding in <u>McCurdy v. Am. Bd. of Plastic Surgery</u>, 157 F. 3d 191 (3d Cir. 1998) in support of its argument that Plaintiff does not have good cause for the delay in service. <u>McCurdy</u>, however, is distinguishable from the case at hand. The <u>McCurdy</u> court concluded that the plaintiff had not shown good cause because "[n]one of [the plaintiff's] attempts at service was timely." <u>Id.</u> at 196. Herein, the record clearly shows that Plaintiff made a specific and reasonable attempt to obtain a waiver of service from Defendant. Only because it was incorrectly thought that the waiver was executed and returned did Plaintiff not make any further attempts at service. Upon realizing that Defendant had not returned an

executed Waiver of Summons form, Plaintiff immediately took the necessary steps to have a formal Summons duly issued and personal service made upon Defendant.

      2.    <u>Defendant is Not Prejudiced by the Late Service</u>

      The second factor – whether the Defendant is prejudiced by the lack of timely service – must be answered in the negative in this instance. "[P]rejudice has been defined in the context of service as 'involving impairment of the defendant's ability to defend on the merits, rather than foregoing . . . a procedural or technical advantage." <u>Boley</u>, 123 F.3d at 759 (quoting <u>Nat'l Union Fire Ins. Co. v. Barney Assocs.</u>, 130 F.R.D. 291, 294 (S.D.N.Y. 1990)). "Here, [D]efendant's actual knowledge of the lawsuit  - which is undisputed – is crucial." <u>United States v. Nuttall</u>, 122 F.R.D. 163, 167 (D. Del. 1988). Defendant has had notice of this claim since at least March 23, 2006 when it received a copy of the Complaint, along with the Waiver of Summons form. Actual notice evidenced by Defendant precludes any finding of detrimental reliance by, or prejudice to, Defendant, notwithstanding that service of process did not comport with every detail of Rule 4. <u>In re: Submicron Systems Corporation v. Stokes Electrical Supply</u>, 2004 U.S. Dist. LEXIS 19170, *11 (D. Del. Sept. 21, 2004) (<u>citing Boley</u>, 123 F.3d at 759 ("Actual notice to a defendant that an action was filed militates against a finding of prejudice.")) Notably, Defendant does not allege and could not in good faith allege that it is prejudiced by not receiving actual service of the Complaint because it had actually received the Complaint in March 2006. Further, Defendant does not allege that evidence is stale, witnesses are likely to

be unavailable or documents are lost and/or misplaced, events that could possibly evidence prejudice.

Equally, the purpose and intent of the service requirements have not been frustrated to the prejudice of Defendant.  The fundamental purposes behind the requirement of proper service, notice and opportunity to defend, have not been defeated.   Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950); see Cresswell v. Walt Disney Prod., 677 F. Supp. 284, 287, n.5 (M.D. Pa. 1987) (refusing to dismiss for insufficient process pursuant to Rule 4 because defendants failed to allege "material" prejudice and had received notice of the pendency of the action).

    3.    Plaintiff Has Requested an Enlargement of Time to Effectuate Service

Finally, with respect to the third factor, soon after learning personal service of the Summons and Complaint were necessary because Defendant had chosen not to execute the Wavier of Summons form, and in response to the Court's Order to Show Cause, Plaintiff by letter brief dated September 7, 2006, requested that the Court "relieve Plaintiff of the consequences of Rule 4(m)" by enlarging the time for Plaintiff to serve Defendant with the Complaint and Summons.  In addition, Plaintiff herein formally moves this Court for an extension of time to perfect service on Defendant.  See Fed. R. Civ. P. 6(b)(2) ("the court for cause shown may at any time in its discretion upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.")

Based on the foregoing, Plaintiff has shown good cause for her inadvertent failure to serve process within 120 days in accordance with Rule 4(m). Therefore, Defendant's Motion must be denied and Plaintiff afforded an extension of time to effectuate service of process.

**C.    In the Absence of a Finding of Good Cause, the Court Should Exercise Its Discretion to Extend the Service Deadline.**

It is well established that a "district court may extend time for service even where there is no good cause shown." <u>Petrucelli</u>, 46 F.3d at 1305. In deciding whether to exercise its discretion to extend the service deadline, the court must consider whether any factors warrant extending time even though good cause was not shown. Many factors, though insufficient on their own to constitute good cause, weigh in favor of granting Plaintiff additional time to serve process in this case.

First, as stated above, there is no evidence that Defendant has suffered prejudice due to the delay in service. Defendant has made no showing that its ability to defend on the merits has been impacted by the delay in service of the Complaint.

Additionally, to the extent that the court does not find that good cause existed, "the Court may then consider whether the running of the statute of limitations would warrant granting an extension of time." <u>Petrucelli</u>, 46 F.3d. at 1306. In fact, the Advisory Committee note to Rule 4(m) provides that in the exercise of its discretions, relief [in the form of an extension of time for service]

may be justified by the court if the statute of limitations would bar the refiled

action." Fed. R. Civ. P. 4(m) Advisory Committee's notes (1993).

In <u>Farrace v. United States</u>, 220 F.R.D. 419 (D. Del. 2004), this Court held

that even though the plaintiff did not establish good cause for the delay of

service, the Court was persuaded that the expiration of the statute of limitations

on the plaintiff's claims militated against denying an extension. <u>Farrace</u>, 220

F.R.D. at 421. In <u>Farrace</u>, the plaintiff filed a complaint against the United States

Government resulting from the denial of the plaintiff's application for a federal

firearms license. In ruling on the Government's motion to dismiss the plaintiff's

complaint for failure to serve the complaint within 120 days, this Court

determined that while the plaintiff had not shown good cause for the delay in

effecting service, and while the running statute of limitations does not mandate

the Court to grant the plaintiff an extension, after considering all the

circumstances presented, a dismissal with prejudice of the plaintiff's complaint

without addressing the merits would be unjust. <u>Id.</u> at 422.

For sure, if the Court does not extend the time for service herein, Plaintiff

will be barred from bringing her case because the expired statute of limitations

will prevent her from refiling the Complaint.[3] <u>See</u> <u>In re: Submicron Systems</u>,

---

[3] . Plaintiff has 90-days from issuance of the Notice of Right to Sue letter to file a
Complaint in federal court. <u>Garrison v. Town of Bethany Beach</u>, 131 F. Supp. 2d
585, 589 (D. Del. 2001) (citing <u>Mosel v. Hills Dept. Store, Inc.</u>, 789 F.2d 251, 253
(3d Cir. 1986) ( "Plaintiffs have 90 days from the date they receive a right to sue
letter to file a suit in federal court. Without evidence that a plaintiff did not receive
notice of a right to sue, any attempt to file a complaint even one day after the 90
day time period must result in dismissal."))

2004 U.S. Dist. LEXIS at *11, 12 (citing Hodges v. Greiff, 2001 U.S. Dist. LEXIS 25039, 2002 WL 34368774, *2 (E.D. Pa. November 19, 2001) ("The fact that most of plaintiff's claims against defendant would now be time-barred [if an extension of time to serve is denied] is a factor supporting an exercise of the Court's discretion."))

Further, this Court has set forth some additional factors for determining whether to exercise discretion, including:  1) the frivolousness of the plaintiff's complaint; 2) the plaintiff's motivation in pursing its claims; 3) the objective unreasonableness of the plaintiff's case (both its factual and legal components); and, 4) the need in particular circumstances to advance considerations of compensation and deterrence.  Ritter v. Cooper, 2003 U.S. Dist. LEXIS 23544, 2003 WL 23112306, *3 (D. Del. Dec. 30, 2003).

Plaintiff's claims against Defendant are not frivolous.  There is legal and factual support for the specific allegations contained in the Complaint. The claims against Defendant are warranted by existing law and have evidentiary support.[4] Defendant seems to rely on the fact that the administrative agencies made a "no cause" determination in response to Plaintiff's allegations set forth in the administrative charge of discrimination.  It is, however, well established that a

---

[4]   In fact, Plaintiff has set forth a prima facie case of gender discrimination and retaliation and sexual harassment against Defendant.  To establish a prima facie case of gender discrimination, the plaintiff must prove that: (1) she is a member of a protected class (Complaint ¶ 12); (2) she suffered some form of adverse employment action (Complaint ¶¶ 32-35); and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently (Id. ¶ 36). See Jones v. School. Dist. of Phila.,198 F.3d 403, 410 (3d Cir. 1999)).

party "is entitled to a trial *de novo* in the district court. If the charge is frivolous or misdirected, procedures are there available by which the [defendant] may extricate himself from liability." EEOC v. E.I. DuPont de Nemours & Co., 373 F. Supp. 1321, 1338 (D. Del. 1974), aff'd, 516 F.2d 1297 (3d Cir. 1975); see also University of Tennessee v. Elliott, 478 U.S. 788, 796, 92 L. Ed. 2d 635, 106 S. Ct. 3220 (1986) (state agency findings unreviewed by courts have no preclusive effect on Title VII claims).

Moreover, there is absolutely no evidence of record that Plaintiff's failure to effect service on Defendant was motivated by bad faith. Also absent from the record is evidence of "the type of conscious disregard of the Federal Rules that would compel the Court to deny [the plaintiff] an extension of time to properly effect service. "Instead, [in this matter, the plaintiff's] mailings of the Requests for Waiver [of Summons] were done in good faith." Farrace, 220 F.R.D. at 422. Plaintiff, however, mistakenly believed the request for waiver to have been returned. Further, once Plaintiff realized that Defendant had not waived formal service and therefore had not been properly served, Plaintiff had Defendant personally served with a Summons and Complaint.[5] Id.

In sum, the circumstances surrounding the delay in service and the lack of prejudice to Defendant resulting therefrom favor a discretionary extension of time in this matter. See Carter v. Marmon/Keystone Corp., No. 05-311-KAJ, 2006 U.S. Dist. LEXIS 21094 (D. Del. April 7, 2006) (This Court exercised its discretion

---

[5] Defendant was served with the Summons and Complaint before Defendant filed its Motion to Dismiss at issue herein.

and extended the time for service of process allowing the plaintiff to serve

process after 120 days); In re: Submicron, 2004 U.S. Dist. LEXIS at *12 ("In light

of the substantial risk of prejudice to plaintiff [and the absence of any prejudice to

defendant] the court finds that it would be unjust to deprive plaintiff of the

opportunity to prove his claim by dismissing his complaint. . . ")

**D.    This Court Has Supplemental Jurisdiction Over Plaintiff's State
Discrimination and Retaliation Claims, and Therefore The Claims
Should Not Be Dismissed.**

The DDEA provides the sole remedy for an aggrieved employee to bring

her employment discrimination claims. 19 Del. C. § 710. Contrary to what

Defendant argues in its brief, however, that fact has no bearing on this Court's

jurisdiction over this case.[6] See Defendant's Motion to Dismiss at p. 14. A basic

review of federal civil procedure makes it clear that this Court has pendent

jurisdiction over Plaintiff's claims. "'Pendent jurisdiction permits a plaintiff, in

appropriate circumstances, to join with his federal claim a related state claim over

which the court had no independent basis of subject matter jurisdiction." See

Sansom Committee v. Lynn, 735 F.2d 1535, 1551 n.6 (3d Cir. 1984)(citing Wright

and Miller, Federal Practice & Procedure at § 3567 (1975)). In 1990, Congress

codified the common law doctrine of pendent jurisdiction enveloping it within

supplemental jurisdiction under section 1367 of the United States Code. See 32

U.S.C. § 1367; see also, Lindsay v. Kvortek, 865 F.Supp. 264, 272 (W.D. Pa.

1994). Section 1367 states, in relevant part ". . . in any civil action in which the

---

[6]  Indeed, section 714 (c) of the DDEA specifically states that "[t]he charging
party shall elect a Delaware or federal forum to prosecute the employment
discrimination cause of action so as to avoid unnecessary costs, delays and
duplicative litigation."  (emphasis added).

district courts have original jurisdiction, the district courts have supplemental

jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy . . .

." 32 U.S.C. § 1367.  Therefore, under section 1367 this Court has, in addition to

its original jurisdiction conferred under Article III of the United States Constitution

over Plaintiff's federal law claims, jurisdiction over the state law claims at issue

here.

Defendant argues, even in the face of section 1367, that this Court cannot

decide Plaintiff's state law discrimination claims.  <u>See</u> Defendant's Motion to

Dismiss at p. 14.  In making this argument Defendant relies on a disingenuous

interpretation of <u>EEOC v. Avecia</u>, No. 04-3396, 2005 U.S. App. LEXIS 22157, *7-

8 (3d Cir. October 13, 2005), and quite obviously confuses the question of

available remedies with that of jurisdiction and forum.  In <u>Avecia</u>, the plaintiff

relied on a Delaware Supreme Court case, <u>Schuster v. Derocili</u>, for her assertion

that she could bring a common law employment discrimination claim.  775 A.2d

1029 (Del. 2001).  The relevant portion of the <u>Schuster</u> opinion states:

> We recognize that the Delaware Discrimination in
> Employment Statute establishes a procedural scheme
> within which employees may assert discrimination
> claim, including appellate review, as well as the
> authority of the Department of Labor to enforce the
> statute's mandate.  <u>The statute, however, is silent on
> whether a plaintiff may file a separate cause of action
> independently of the statute.  The statute neither
> explicitly includes nor explicitly proscribes a separate
> cause of action based on a common law claim for
> breach of contract.</u>  While this Court will not "engraft
> upon a statute language which has been clearly
> excluded therefrom by the Legislature," because of
> the insidious nature of sexual harassment in the

16

workplace, we conclude that the General Assembly intended to combat sexual harassment in an expansive rather than restrictive scheme. <u>The statute in question does not explicitly state that the remedies contained within it are exclusive to all others, therefore, it is entirely consistent with the General Assembly's intention to promote civilized conduct in the workplace to allow private causes of action for breach of contract based upon termination solely caused by the failure to respond to unwanted sexual advances by an employer.</u>

775 A.2d at 1037 (emphasis added).

After <u>Schuster</u> the exclusivity of the DDEA was left in question and in answer to that opinion the Legislature enacted Bill 154. As the Synopsis to Bill 154 states (and Defendant cites in its own brief) "[t]h(e) bill effectively re-establishe[d] the exclusive remedy put in question by the decision in <u>Schuster v. Derocili</u>, 775 A.2d 1029." Senate Bill No. 154, 142nd General Assembly (Del. 2004). This clarification of the statute is all that the Third Circuit affirmed in <u>Avecia</u> – that there is no common law cause of action for sexual harassment in the workplace. <u>Avecia</u>, No. 04-3396, 2005 U.S. App. LEXIS 22157, *7.

Thus, the DDEA, Delaware caselaw nor federal caselaw suggest that the federal district courts cannot exercise supplemental jurisdiction over Delaware state law employment discrimination claims. To the contrary, courts within this circuit (including this one) have decided state law employment discrimination claims together with federal Title VII claims. In fact, the district court in <u>Avecia</u> (which again Defendant cited in its own brief) itself decided Title VII and Delaware state law claims. <u>Avecia</u>, No. 04-3396, 2005 U.S. App. LEXIS 22157, *1; <u>see also</u>, <u>Petrocelli v. DiamlerChrysler Corp.</u>, No. 04-943-KAJ, 2006 U.S.

Dist. LEXIS 11972, *1 (D. Del. March 22, 2006); <u>Nichols v. Bennett Detective &</u>

<u>Protective Agency, Inc.</u>, No. 05-55-KAJ, 2006 U.S. Dist. LEXIS 35491, *1 (D. Del.

May 31, 2006).  Thus, Plaintiff's state law claims are properly before this Court

and should not be dismissed.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Plaintiff respectfully

requests that this Court deny Defendant's Motion to Dismiss Plaintiff's Complaint

for lack of timely service of process and grant Plaintiff an extension of time for

service.  Further, Defendant's Motion to Dismiss state law claims should also be

denied as this Court has jurisdiction, pursuant to relevant statutory and common

law, to decide these claims.

Respectfully submitted,


By: /s/ Donna L. Harris
Donna L. Harris (#3740)
dharris@crosslaw.com
Cross & Simon, LLC
913 N. Market Street, 11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
302-777-4200
302-777-4224 - facsimile

Johnny J. Butler
jbutler@boothtucker.com
Yvonne Barnes Montgomery
ymontgomery@boothtucker.com
Booth &Tucker, LLP
1617 JFK Boulevard, Suite 1700
Philadelphia, PA 19103
215-875-0609
215-875-8143 (facsimile)

Dated: <u>October 2, 2006</u>

# Exhibit  A

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Sharon Rozier Phillips
5 Westbury Drive, New Castle, DE 19720

**(b)** County of Residence of First Listed Plaintiff    New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Johnny J. Butler, Esq and Yvonne Barnes
Montgomery, 1617 JFK Blvd, Suite 1700, Phila, PA
19103   (215) 875-0609

## DEFENDANTS
Household Finance Corporation
1144 Pulaski Highway
Bear, DE   19702

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☒☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | PERSONAL PROPERTY | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 2000e, et seq.
Brief description of cause:
Sexual harassment and retaliation

## VII. REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
(See instructions):
JUDGE                                         DOCKET NUMBER

DATE   2/14/06

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity.    Example:    U.S. Civil Statute: 47 USC 553
                                                                                    Brief Description: Unauthorized reception of cable service

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    Related Cases. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SHARON ROZIER PHILLIPS**<br>5 Westbury Drive<br>New Castle, DE 19720 | : | CIVIL NO. _____ 0 6   1 0 0 |
| | : | |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| **HOUSEHOLD FINANCE**<br>**CORPORATION**<br>1144 Pulaski Highway<br>Bear, DE 19702 | : | |
| | : | |
| | : | |
| Defendant. | : | |

2006 FEB 15  PH 2: 45
FILED US
DISTRICT OF DELAWARE

## COMPLAINT- CIVIL ACTION

### I.   PRELIMINARY STATEMENT

1.     The plaintiff, Sharon Rozier-Phillips ("plaintiff"), brings this employment discrimination action against the defendant Household Finance Corporation ("HFC" or "defendant") as a result of defendant's unlawful discrimination and sexual harassment during plaintiff's employment because of plaintiff's gender.  As a direct and proximate result of defendant's discriminatory and improper conduct, plaintiff suffered substantial economic loss, pain and suffering.  Plaintiff seeks compensatory and punitive damages, and all other available statutory relief under federal and state law.

### II.   JURISDICTION AND VENUE

2.     The causes of action set forth in this Complaint arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and the

Delaware Discrimination in Employment Act, Del. Code Ann. tit.19, § 710, *et seq*. ("DDEA").

3.     Jurisdiction over plaintiff's federal law causes of action is conferred upon this Court by 28 U.S.C. §1331, 42 U.S.C. §2000e-5(f) (3), and 29 U.S.C. §2617(a) (2).

4.     This Court has supplemental jurisdiction over plaintiff's DDEA claim pursuant to 28 U.S.C. § 1367.

5.     Venue is proper pursuant to 42 U.S.C. §2000(3)-5(f), 29 U.S.C. §2617 (a)(2), and 28 U.S.C. §1391.

6.     On or about December 12, 2003, plaintiff filed a charge of discrimination with the Delaware Department of Labor ("DDL"), which charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

7.     Plaintiff's charge of discrimination complained of the exact acts of discrimination that are described herein. A true and correct copy of Plaintiff's Charge of Discrimination filed with the DDL and the EEOC is attached hereto as Exhibit "A."

8.     Plaintiff received the EEOC's Notice of Right to Sue dated November 17, 2005. A true and correct copy of the EEOC's Notice of Right to Sue is attached hereto as Exhibit "B."

9.     More than one year has passed since plaintiff's charge was dual-filed with the DDL.

10.     Plaintiff has fully complied with all federal and state administrative prerequisites for the commencement of this action.

## III.   PARTIES

11.    Plaintiff is a resident of the State of Delaware, who resides at 5 Westbury Drive, New Castle, DE 19720.

12.    Plaintiff is a female.

13.    At all times material hereto, plaintiff was an employee of defendant HFC within the meaning of the federal and state anti-discrimination laws at issue and whose rights are protected by the laws and statutes cited herein.

14.    Defendant HFC is a private financial services company that primarily provides loans, including personal, home equity and mortgage, to its customers, with a principle place of business located at 1144 Pulaski Highway, Bear, DE 19702.

15.    Defendant employs thousands of persons, operates branch offices in most of the 50 states, and provides financial services throughout the greater Mid-Atlantic region, including Delaware.

16.    At all times material hereto, defendant was an employer within the meaning of the controlling federal and state laws cited herein.

17.    At all times material hereto, defendant acted by and through its authorized agents, servants, workmen and/or employees, who were then and there acting within the course and scope of their employment.

## IV.   FACTUAL ALLEGATIONS

18.    In September 2002, defendant hired plaintiff for the position of Senior Account Executive.

19.     Plaintiff's duties included assisting HFC clients with their respective loan needs, identifying the proper loan products for HFC clients and preparing necessary loan applications and paperwork, all of which had to be reviewed and approved by HFC supervisory personnel.

20.     From the outset of plaintiff's employment, defendant rated plaintiff's work performance as satisfactory or better.  HFC never warned plaintiff of poor or unacceptable performance.

21.     In fact, while employed with HFC, plaintiff received many letters of praise from clients with whom she worked.  Additionally, HFC recognized plaintiff for he superior work performance.

22.     In or about September 2003, Terry Parker, a male, became plaintiff's immediate supervisor.

23.     From approximately October 2003 through the time of plaintiff's employment separation from HFC, plaintiff was subjected to unwelcomed sexual harassment by Mr. Parker while working with him at HFC.

24.     In fact, Mr. Parker's behavior was profane, hostile and demeaning to women in general, and to plaintiff in particular on almost a daily basis.

25.     Mr. Parker made continuous and on-going sexual advances and inappropriate sexual comments to plaintiff including, but not limited to, telling her that because of her telephone voice, she had to be gorgeous and that he wanted to "smack that [plaintiff's] ass."

2

26.    Mr. Parker continuously made sexual comments about the physical attributes female customers and female employees of HFC in a graphic and demeaning manner.

27.    Mr. Parker regularly stated that as a HFC Senior Account Executive, it was plaintiff's business to "sell sex, not loans."

28.    Mr. Parker would also stare at plaintiff and other females in a sexually-suggestive manner, causing plaintiff to feel extremely uncomfortable and nervous and plaintiff told him as much on several occasions.

29.    On or about November 21, 2003, Mr. Parker was on the telephone with another HFC employee. When plaintiff asked Mr. Parker to whom he was speaking, Mr. Parker replied that he was talking to "John Holmes, a 'porn star,'" at which time Mr. Parker stared at plaintiff while gesturing toward his penis in an attempt to engage her in sexual play.

30.    At all times, plaintiff rebuffed Mr. Parker's sexual suggestions and harassment and asked him to stop.

31.    Mr. Parker's sexual suggestions and harassment were without invitation, consent or permission and an implied condition for plaintiff receiving sufficient job benefits.

32.    Mr. Parker consistently reminded plaintiff that he was the supervisor and she was the subordinate, so as to intimidate plaintiff and remind plaintiff that he had the authority to affect her work opportunities.

33.     Mr. Parker's conduct unreasonably interfered with plaintiff's work performance and created an intimidating, hostile and offensive work environment.

34.     Because plaintiff did not respond positively to Mr. Parker's sexual innuendo and advances, Mr. Parker targeted plaintiff for unfair harassment, scrutiny retaliation and adverse employment action.

35.     In fact, Mr. Parker stopped "signing off" on loans and other HFC customer documents that plaintiff processed, thereby making her ineligible for receiving commissions on the loans that she generated.  Plaintiff was entitled to the commissions pursuant to HFC protocols and practices.  Mr. Parker had no legitimate reason for refusing to sign-off on loans processed by plaintiff.

36.     Mr. Parker did not subject male employees to sexually harassing conduct and intimidation and retaliation.

37.     On or about November 19, 2003, a female co-worker of plaintiff, who was also sexually harassed by Mr. Parker, complained, on behalf of plaintiff and herself, about Mr. Parker's unwelcome, sexually harassing conduct and retaliation.

38.     HFC failed to timely acknowledge, investigate and/or respond to plaintiff's complaints of improper behavior treatment, and took no steps to address plaintiff's concerns.

39.     It was not until after plaintiff filed a charge of discrimination with an external agency complaining about the sexually hostile work environment to which she was subjected and retaliation did HBC transfer Mr. Parker to another HFC branch office located in Dundalk, MD.

4

40.    Plaintiff has been subjected to the denial of equal terms, conditions and privileges of employment, including a sexually hostile, intimidating and retaliatory work environment.

41.    Plaintiff has and is now suffering and will continue to suffer irreparable injury and monetary damages as a result of sexually hostile, discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

## COUNT I

### Defendant, HFC violated the Civil Rights Act of 1964
### 42 U.S.C. §2000e, et seq.: Sexual Harassment

42.    Plaintiff, Sharon Rosier-Phillips, repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

43.    Defendant, Household Finance Corporation, violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., in that it created, permitted, tolerated, encouraged and fostered a sexually hostile, intimidating, demeaning, degrading and demoralizing environment at the HFC location at which plaintiff worked, which hostile environment was ongoing and pervasive throughout the entirety of plaintiff's employment, as evidenced by the above-described improper and discriminatory acts.

44.    The hostile sexual environment was created by and known to HFC's supervisory personnel, who took no meaningful or effective action to terminate the offending behavior, to remove the offending environment or to discipline the offensive employees.

45.    As a consequence of the hostile environment supported and encouraged by the defendant's actions and failures to act, plaintiff was subjected to emotional distress, humiliation, ridicule and negative effect on her work product and ability to fully and effectively perform her job duties and responsibilities, all of which manifested itself in mental and physical distress, injury and damage, including, but not limited to, sleeplessness, nervousness, and headaches.

46.    As a result of the sexually hostile environment plaintiff has suffered emotional distress, physical injury, a loss of self-respect and confidence, and been subjected to great damage to her career and professional standing.

47.    Said violations were intentional and willful.

48.    Said violations warrant the imposition of punitive damages because of the HFC's malice and reckless indifference to plaintiff's federally protected rights.

49.    As a direct and proximate result of HFC's violations of Title VII, plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorney's fees and costs.

50.    No previous application was made for the relief requested herein.

## COUNT II
### Defendant, HFC violated the Civil Rights Act of 1964
### 42 U.S.C. §2000e, et seq.: Retaliation

51.    Plaintiff, Sharon Rozier-Phillips, repeats and realleges paragraphs 1 through 50 as though fully set forth herein.

52.    Based on the foregoing, HFC has engaged in unlawful practices in violation of the provisions of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

6

2000e, et seq. These said unlawful practices for which HFC is liable to Plaintiff include, but are not limited to, retaliating against plaintiff because she filed internal and external complaints of discrimination and complained to HFC supervisory personnel and management about sexual harassment and discrimination endured in the workplace.

53.    HFC's retaliation included, but was not limited to, subjecting plaintiff to a hostile work environment and less favorable working conditions, treating plaintiff in a disparate manner and allowing Mr. Parker to refuse to credit plaintiff with commissions on work she did pursuant to HFC practices and polices, and thereby ultimately causing the termination of plaintiff's employment relationship with HFC.

54.    Said violations were intentional and willful.

55.    Said violations warrant the imposition of punitive damages because of the HFC's malice and reckless indifference to plaintiff's federally protected rights.

56.    As a direct and proximate result of HFC's violations of Title VII, plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorney's fees and costs.

57.    No previous application was made for the relief requested herein.

### COUNT III
### Defendant, MEI violated the Delaware Discrimination in Employment Act Del. Code Ann. tit.19, § 710, et seq. - Sexual Harassment

58.    Plaintiff, Sharon Rosier-Phillips, repeats and realleges paragraphs 1 through 57 as though fully set forth herein.

59.    Defendant, Household Finance Corporation, violated the provisions of the Delaware Discrimination in Employment Act, Del. Code Ann. tit.19, § 710, et seq., in

7

that it created, permitted, tolerated, encouraged and fostered a sexually hostile, intimidating, demeaning, degrading and demoralizing environment at the HFC location at which plaintiff worked, which hostile environment was ongoing and pervasive throughout the entirety of plaintiff's employment, as evidenced by the above-described improper and discriminatory acts.

60.     The hostile sexual environment was created by and known to HFC's supervisory personnel, who took no meaningful or effective action to terminate the offending behavior, to remove the offending environment or to discipline the offensive employees.

61.     As a consequence of the hostile environment supported and encouraged by the defendant's actions and failures to act, plaintiff was subjected to emotional distress, humiliation, ridicule and negative effect on her work product and ability to fully and effectively perform her job duties and responsibilities, all of which manifested itself in mental and physical distress, injury and damage, including, but not limited to, sleeplessness, nervousness, and headaches.

62.     As a result of the sexually hostile environment plaintiff has suffered emotional distress, physical injury, a loss of self-respect and confidence, and been subjected to great damage to her career and professional standing.

63.     Said violations were intentional and willful.

64.     Said violations warrant the imposition of punitive damages because of the HFC's malice and reckless indifference to plaintiff's federally protected rights.

8

65.    As a direct and proximate result of HFC's violations of the DDEA, plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorney's fees and costs.

66.    No previous application was made for the relief requested herein.

## COUNT IV

## Defendant, HFC violated the Delaware Discrimination in Employment Act Del. Code Ann. tit.19, § 710, et seq.- Retaliation

67.    Plaintiff, Sharon Rozier-Phillips, repeats and realleges paragraphs 1 through 66 as though fully set forth herein.

68.    Based on the foregoing, HFC has engaged in unlawful practices in violation of the provisions of the Delaware Discrimination in Employment Act,  Del. Code Ann. tit.19, § 710, et seq. These said unlawful practices for which HFC  is liable to plaintiff include, but are not limited to, retaliating against plaintiff because she filed internal and external complaints of discrimination and complained to HFC supervisory personnel and management about sexual harassment and discrimination endured in the workplace.

69.    HFC's retaliation included, but was not limited to, subjecting plaintiff to a hostile work environment and less favorable working conditions, treating plaintiff in a disparate manner and allowing Mr. Parker to refuse to credit plaintiff with commissions on work she did pursuant to HFC practices and polices, and thereby ultimately causing the termination of plaintiff's employment relationship with HFC.

70.    HFC's retaliation included, but was not limited to, subjecting plaintiff to a hostile work environment and less favorable working conditions, treating plaintiff in a

9

disparate manner and allowing Mr. Parker to refuse to credit plaintiff with commissions on work she did pursuant to HFC practices and polices, and thereby ultimately causing the termination of plaintiff's employment relationship with HFC.

71.    Said violations were intentional and willful.

72.    Said violations warrant the imposition of punitive damages because of the HFC's malice and reckless indifference to plaintiff's rights protected under the DDEA.

73.    As a direct and proximate result of HFC's violations of the DDEA, plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorney's fees and costs.

74.    No previous application was made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, Sharon Rozier-Phillips, respectfully requests that this Court:

(a)    enter a declaratory judgment that HFC's acts complained of herein violated and continue to violate the rights of plaintiff as secured to her by federal and state legislative enactments;

(b)    enjoining and restraining permanently the violations alleged herein;

(c)    award to plaintiff compensatory damages including past and future loss of earnings and benefits and loss of professional growth opportunities in a proper and adequate monetary amount;

(d)    place plaintiff in an appropriate permanent position for which she is fully qualified and which will enhance her future career at HFC or

10

elsewhere;

(e)    award to plaintiff damages for emotional distress, mental anguish,

humiliation and loss of self-esteem, the loss of life's pleasures,

loss of her ability to provide herself and her family, and loss of

other benefits that plaintiff has sustained and will in the future

sustain as a result of HFC's improper, discriminatory and retaliatory

treatment;

(f)    award to plaintiff punitive and exemplary damages against HFC in

a proper and adequate monetary amount;

(g)    award to plaintiff liquidated damages;

(h)    grant to plaintiff pre-judgment interest in an appropriate amount;

(i)    grant to plaintiff such other additional relief as this Court deems just

and proper under the circumstances of this case;

(j)    award plaintiff costs of this action, together with reasonable
attorney's fees.

Dated: _2/14/06_

Johnny J. Butler (I.D. No. 29237)
Yvonne Barnes Montgomery (I.D. No. 70962)
BOOTH & TUCKER, LLP
1617 JFK Boulevard
Suite 1700
Philadelphia, PA 19103
(215) 875-0609

11

**A**

EEOC Form 161 (3/98)          U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Sharon Rozier-Phillips | From: | Philadelphia District Office |
|---|---|---|
| 3904 Cindy Drive | | 21 South 5th Street |
| Newark, DE 19702 | | Suite 400 |
| | | Philadelphia, PA 19106 |

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 17C-2004-00170 | Charles Brown, III, State & Local Coordinator | (215) 440-2842 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>**WITHIN 90 DAYS**</u> of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Marie M. Tomasso*                                          November 17, 2005

Marie M. Tomasso,                                              (Date Mailed)
District Director

Enclosure(s)

cc: HOUSEHOLD FINANCE CORPORATION
1144 Pulaski Highway
Newark, DE 19702

# Exhibit B

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brian Hegge, Manager
Household Finance Corporation
1144 Pulaski Highway
Bear, DE 19702

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

I. Butts

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)    7004 2890 0003 9121 0235

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Yvonne Barnes Montgomery, Esquire
Booth & Tucker LLP
One Penn Center at Suburban Station
1617 JFK Blvd., Suite 1700
Philadelphia, PA 19103

RE:  Rozier Phillips

C001    ‖₁₁‖ll‖₁₁₁‖ll₁₁₁‖₁₁₁ll‖₁lll₁₁₁ll‖ll‖₁ll

## CERTIFICATE OF SERVICE

I, Donna L. Harris, hereby certify that on this 2nd day of October, 2006, I caused copies of the **Plaintiff, Sharon Rozier Phillips Response in Opposition Motion to Dismiss of Defendant and Motion for Extension of Time to Effect Service** to be served upon the attached service list as indicated.

**VIA HAND DELIVERY**
Jennifer C. Jauffret, Esq.
Kelly A. Green, Esq.
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19801

   /s/ Donna L. Harris
Donna L. Harris (No. 3740)